UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

JAIRO GABRIEL MONTOYA HERNANDEZ,    :

                    Petitioner,    :    11 Civ. 4955 (JSR)(HBP)

   -against-               :    REPORT AND
                                RECOMMENDATION
UNITED STATES OF AMERICA,    :

                   Respondent.    :

----------------------------------X


      PITMAN, United States Magistrate Judge:


      TO THE HONORABLE JED S. RAKOFF, United States District

Judge,


I.  Introduction


      Pro se petitioner Jairo Gabriel Montoya Hernandez moves

pursuant to 28 U.S.C. § 2255 to vacate, set aside or correct the

sentence imposed on him by the Honorable Judge Jed Rakoff, United

States District Judge, in the criminal case bearing Docket No. 07

Cr. 197 (JSR).

      Petitioner claims that he received ineffective assis-

tance of counsel at sentencing because his counsel failed to

challenge evidence offered by the Government that tended to show

that he was an organizer or leader of the charged narcotics

conspiracy, and that rendered him ineligible for relief from an

otherwise mandatory minimum sentence.  For the reasons set forth below, I respectfully recommend that the motion be denied.

II.  <u>Facts</u>

    A.  Petitioner's
       <u>Underlying Offenses</u>

      Petitioner is a Colombian national who, from at least as early as 2005, conspired with others to import heroin from Colombia into the United States (Ex. A to the Government's Opposition, dated January 10, 2012, ("Opp'n") at ¶¶ 14, 28).  Petitioner brokered heroin sales, set courier travel routes, arranged accommodations for couriers upon their arrival in the United States, laundered the money earned from drug sales and distributed the proceeds to investors (Opp'n at 2).

    B.  <u>Procedural History</u>

      1.  The Indictment and
         <u>Petitioner's Guilty Plea</u>

      Petitioner and seven co-defendants were indicted on March 15, 2007 and charged with participating in a conspiracy to import and to distribute in the United States one or more kilo-grams of heroin in violation of 21 U.S.C. §§ 846, 963 (Ex. A to Opp'n at ¶¶ 2-3).  Petitioner was arrested in and extradited from

Colombia to face the charges in the indictment on June 18, 2008 (Ex. A to Opp'n at 1).

On January 21, 2009, petitioner pled guilty to both counts of the indictment.  Petitioner had no agreement with the Government concerning his plea (Ex. A to Opp'n at ¶ 5).

2.  <u>Sentencing</u>

Prior to petitioner's sentencing, the Probation Department prepared a Presentence Report[1] ("PSR") that calculated the applicable guidelines sentence pursuant to the United States Sentencing Guidelines (the "Guidelines").  The PSR noted that petitioner's base level was thirty-six and that a four-level enhancement was warranted because petitioner was an organizer or leader of a conspiracy involving five or more participants (Ex. A to Opp'n at ¶¶ 45, 48).  The Probation Department did not reduce petitioner's offense level for acceptance of responsibility because it found that petitioner "ha[d] not truthfully admitted the conduct comprising the offense of the conviction" (Ex. A to

---

[1]This version of the PSR is identical to the amended version annexed to the Government's Opposition except with respect to paragraph 36, which corrected the amount of heroin for which petitioner was held accountable for distributing (<u>See</u> Order, dated November 17, 2009, (Docket Item 59 in 07 Cr. 197); Ex. E to Opp'n at 7).

Opp'n at ¶ 51).  The PSR concluded that his Guidelines range was 292 to 365 months (Ex. A to Opp'n at ¶ 51).

Petitioner, through his new counsel,[2] requested an evidentiary hearing concerning his sentence pursuant to United States v. Fatico, 603 F.2d 1053, 1055 (2d Cir. 1979); the hearing commenced on September 23, 2009 (Ex. C to Opp'n).  At the outset of the hearing, petitioner contended that he was eligible for relief from the mandatory minimum sentence pursuant to the "safety valve" provision of 18 U.S.C. § 3553(f)(4) (Ex. C to Opp'n at 3).  The Government claimed that petitioner was ineligible for safety valve relief because he played a leadership role in the charged narcotics conspiracy (Ex. C to Opp'n at 3).

During the hearing, the Government offered the testimony of petitioner's son and co-defendant, Mauricio Montoya Macias ("Macias").  Macias testified that he and petitioner were involved in six or seven shipments of heroin between 2005 and 2007 (Ex. C to Opp'n at 27-28).  Macias and petitioner were responsible for obtaining heroin from suppliers in Medellín,

---

[2]Judge Rakoff granted petitioner's application to change counsel, relieving Sabrina P. Shroff, Esq., and appointing Howard Jacobs, Esq., despite finding that there was no evidence that Ms. Shroff's representation was deficient in any respect.  United States. v. Montoya Hernandez, 07 Cr. 197-01 (JSR), 2009 WL 3642868 at *2 (S.D.N.Y. Nov. 4, 2009) (Rakoff, D.J.).  Petitioner makes no claim in the instant petition concerning Ms. Shroff's performance.

4

Colombia and packaging and shipping it to Cucuta, Colombia where it would change hands and eventually make its way to the United States.  Petitioner was also responsible for raising money from investors to purchase the heroin and for distributing the sales proceeds back to investors (Ex. C to Opp'n at 32, 37-38). Petitioner also decided which routes couriers were to take from Colombia to New York and where they should stay upon arrival. Petitioner was in contact with the couriers and the intended customers to coordinate deliveries of the heroin (Ex. C to Opp'n at 33-36).  On cross examination, Macias testified that he and petitioner also negotiated the price and quantity of heroin with customers in the United States (Ex. C to Opp'n at 39-40). However, Macias denied that petitioner's role included recruiting couriers or instructing individuals how to conceal the heroin for transportation (Ex. C to Opp'n at 41).

Petitioner testified on his own behalf at the hearing, stating that he was simply an intermediary that collected money from investors (Ex. C to Opp'n at 19).  He denied investing in more than 950 grams of heroin or recruiting or instructing couriers (Ex. C to Opp'n at 19-20).

In reaching a decision concerning sentencing, Judge Rakoff also considered (1) petitioner's letters to the Court, (2) notes of petitioner's post-arrest interview given on June 1, 2007

and (3) an exhibit summarizing several of petitioner's inter-
cepted telephone calls from 2005 to 2007 (see, e.g., Letter of
Jairo Gabriel Montoya Hernandez to the Honorable Judge Rakoff,
dated May 19, 2009, ("May 2009 Letter"); Government Ex. 11,
annexed to Ex. D to Opp'n, ("DEA Report"); Government Ex. 20,
annexed to Ex. D to Opp'n, ("Call Summary")).

  In a November 4, 2009 Memorandum Order, Judge Rakoff
found that petitioner was an "organizer, leader, manager, or
supervisor of others in the offense" and that he was, therefore,
ineligible for "safety valve" relief.  United States v. Montoya
Hernandez, 07 Cr. 197-01, 2009 WL 3642868 at *4 (S.D.N.Y. Nov. 4,
2009) (Rakoff, D.J.).  Judge Rakoff noted that although "Macias
tempered his testimony in an effort to protect his father,"
"large portions of his testimony" regarding petitioner's supervi-
sory role were credible.  United States v. Montoya Hernandez,
supra, 2009 WL 3642868 at *2.  He also noted that Macias's
testimony was corroborated by petitioner's statements in (1) his
post-arrest interview on June 1, 2007, (2) intercepted telephone
calls and (3) petitioner's May 2009 Letter to the Court.  By
contrast, Judge Rakoff found that petitioner's testimony was not
credible, particularly his statements that he was merely an
intermediary and that he did not recruit or supervise couriers.

From these findings, Judge Rakoff determined that petitioner's Guidelines range was 210 to 262 months (Ex. E to Opp'n at 11).  Judge Rakoff, however, departed from the Guidelines range and imposed a sentence of 150 months imprisonment to be followed by five years of supervised release (Ex. E to Opp'n at 18-19).

### 3.  Petitioner's Appeal

Petitioner appealed his sentence to the Court of Appeals for the Second Circuit.  On appeal, he argued that the District Court committed two errors -- by imposing the burden on him to prove that he was not an organizer, leader, manager, or supervisor of others in the charged offense and by requiring him to testify at the Fatico hearing in violation of the Fifth Amendment -- and that his counsel was ineffective at the Fatico hearing.  Petitioner contended that his counsel was ineffective at the Fatico hearing for failing to object to (1) the misallocation of the burden of proof; (2) the alleged violation of petitioner's Fifth Amendment privilege; (3) Judge Rakoff's consideration of several of petitioner's letters; (4) various statements made by co-defendants about him in safety valve proffers and (5) the Government's proffer of his post-arrest DEA interview.

In a Summary Order dated March 25, 2011, the Second Circuit affirmed the District Court's judgment in all respects. United States v. Hernandez, 416 F. App'x 91, 92 (2d Cir. 2011). With respect to the first claim, the Second Circuit noted that "as this Court has yet to address the issue, the district court's placing the burden on the defendant to prove eligibility for safety valve purposes cannot constitute plain error." United States v. Hernandez, supra, 416 F. App'x at 93.  The Court dismissed petitioner's Fifth Amendment claim, finding that because petitioner "chose to contest his eligibility for safety valve relief at a Fatico hearing" and must "provide a truthful proffer to the government about 'all he knows concerning both his involvement and that of any co-conspirators'" pursuant to 18 U.S.C. § 3553(f)(4), the District Court properly required him to testify.

Turning to petitioner's five specifications of ineffective assistance of counsel,

> [i]n accord with our determinations of Hernandez's arguments regarding burden of proof and a Fifth Amend-ment violation, we hold that the first two bases of-fered by Hernandez in support of his ineffective assis-tance claim are without merit.  Additionally, we hold that his counsel's failure to object to the court's consideration of Hernandez's various letters to the court as well as counsel's failure to "call into ques-tion" statements co-defendants made about Hernandez also lack merit because Hernandez has failed to show prejudice given the district court's limited reliance

8

on the letters and statements in reaching its decision.
In absence of a more fully developed record concerning
the DEA's interview with Hernandez, however, we con-
clude that this issue would be better addressed in the
first instance by the district court.  See, e.g.,
United States v. Iodice, 525 F.3d 179, 186 (2d Cir.
2008).  We therefore deny that portion of the appeal
asserting this argument but do so without prejudice to
it being raised in a 28 U.S.C. § 2255 proceeding.

United States v. Hernandez, supra, 416 F. App'x at 94.

### 4.  The Instant Petition

Petitioner timely filed the instant petition on June
28, 2011 (Docket Item 2), again claiming that he was denied the
effective assistance of counsel.  The instant petition raises
several specifications of alleged ineffective assistance that
were either not raised[3] or not considered on direct appeal.
There is no procedural bar to my consideration of these claims.
Massaro v. United States, 538 U.S. 500, 504 (2003) ("We hold that
an ineffective-assistance-of-counsel claim may be brought in a

---

[3]Petitioner appears to argue in his Reply two specifications
of ineffective assistance that the Second Circuit rejected,
namely, that his counsel failed to object to the Judge Rakoff's
consideration of (1) petitioner's letters to the Court and (2)
statements made by co-defendants about petitioner in proffer
sessions with the Government (Petitioner's Reply in Support of
His Motion Pursuant to 18 U.S.C. § 2255, dated March 12, 2012,
(Docket Item 76 in 07 Cr. 197) ("Pet. Reply") at 26).  Because
"[a Section] 2255 motion may not relitigate issues that were
raised and considered on direct appeal," United States v. Perez,
129 F.3d 255, 260 (2d Cir. 1997), petitioner is barred from
raising these two grounds in the current petition.

collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal").  Specifically, petitioner contends that his counsel was ineffective because he failed to (1) object to the Government's proffer of petitioner's post-arrest DEA interview, (2) use the Government's notes from its three interviews of Macias to impeach Macias's testimony or as substantive evidence and (3) object to the Government's allegedly false representations in their post-hearing letter to the Court ("Attachment 1" to Motion to Vacate, Set Aside, or Correct Sentence, dated June 24, 2011, (Docket Item 2) ("Pet.") at 1-2).

The Government filed its opposition on January 10, 2012 and petitioner replied on March 12, 2012.  On October 17, 2012, petitioner filed a motion to expedite the resolution of his habeas petition and on November 27, 2012, requested the appointment of counsel (Docket Item 12 & 14).

III.  Analysis

A.  Petitions Under
    28 U.S.C. § 2255

A prisoner in federal custody may move to vacate, set aside or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of

the United States, or that the court was without jurisdiction to impose such a sentence, or that sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). "Because collateral challenges are in 'tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack.'" Yick Man Mui v. United States, 614 F.3d 50, 53 (2d Cir. 2010), quoting Ciak v. United States, 59 F.3d 296, 301 (2d Cir. 1995), abrogated on other grounds by, Mickens v. Taylor, 535 U.S. 162 (2002). To succeed on a collateral attack of a final judgment pursuant Section 2255, petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (inner quotation marks and citations omitted); accord Sanders v. United States, 1 F. App'x 57, 58 (2d Cir. 2001); Cuoco v. United States, 208 F.3d 27, 30 (2d Cir. 2000); Rodriguez v. United States, 11 Civ. 2957 (TPG), 2013 WL 6171618 at *1 (S.D.N.Y. Nov. 25, 2013) (Griesa, D.J.).

        Because petitioner is appearing pro se, the Court construes the petition liberally and interprets it to raise the

11

strongest arguments that it suggests.  See <u>Erickson v. Pardus</u>, 551 U.S. 89, 84 (2007); <u>Green v. United States</u>, 260 F.3d 78, 83 (2d Cir. 2001); <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999).

     B.  Ineffective Assistance
        <u>of Counsel</u>

     1.  <u>Applicable Law</u>

In order to prevail on an ineffective-assistance-of-counsel claim, a habeas petitioner must meet the now-familiar, two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 686-87 (1984).

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.
>
>        \*     \*     \*
>
> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction . . . has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.  Unless a defendant makes both showings, it cannot be said that the conviction . . .

resulted from a breakdown in the adversary process that
renders the result unreliable.

Accord Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005); Aeid
v. Bennett, 296 F.3d 58, 62-63 (2d Cir. 2002); Hernandez v.
United States, 202 F.3d 486, 488 (2d Cir. 2000); Hurel-Guerrero
v. United States, 186 F.3d 275, 281-82 (2d Cir. 1999); McKee v.
United States, 167 F.3d 103, 106-07 (2d Cir. 1999); Jackson v.
Leonardo, 162 F.3d 81, 85 (2d Cir. 1998).

In determining whether counsel's performance was
objectively deficient, courts "must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance; that is, the [petitioner] must overcome
the presumption that, under the circumstances, the challenged
action might be considered sound trial strategy." Strickland v.
Washington, supra, 466 U.S. at 689 (internal quotation marks
omitted). Because the test is conjunctive, a habeas petitioner's
failure to satisfy either prong requires that the challenge to
the conviction be rejected. Strickland v. Washington, supra, 466
U.S. at 697; Bennett v. United States, 663 F.3d 71, 85 (2d Cir.
2011).

13

2.  Petitioner Received Effective
Assistance of Counsel

a.  Counsel's Failure to
Object to the DEA Report

Petitioner first contends that his counsel was ineffective for failing to object to the introduction of petitioner's post-arrest DEA interview into evidence (Attachment 1 to Pet. at 1).

Several DEA agents interviewed petitioner on May 31, 2007 in Bogotá, Colombia following petitioner's indictment in the United States and his arrest by the Colombian police (DEA Report at 1).  The Report from that interview indicates that petitioner admitted to, among other things, (1) forming a drug trafficking organization with his son and a Fabio Marin Duque called "Los Combos," (2) purchasing heroin, (3) hiring and instructing couriers to transport the heroin from Colombia to the United States, (4) instructing individuals to hide the heroin in various objects and (5) laundering the proceeds (DEA Report at 2-7).  The DEA Report was submitted to Judge Rakoff following petitioner's Fatico hearing with other evidence in support of the Government's contention that petitioner was an organizer or leader of the charged conspiracy (Ex. D to Opp'n at 2-3 and DEA Report annexed thereto).

14

Petitioner contends that his attorney should have objected to the Government's proffer of this Report on the ground that it violated petitioner's rights under the Confrontation Clause of the Sixth Amendment (Attachment 1 to Pet. at 1).

The Government responds that counsel's objection to the admissibility of the Report would have been futile.  The Government argues in the alternative that counsel's failure to object did not prejudice petitioner because there was other overwhelming evidence that petitioner was an organizer or leader of the conspiracy (Opp'n at 8-10).

Petitioner makes two additional arguments in reply. According to petitioner, counsel should have argued that the DEA Report was inadmissible because it contained unreliable hearsay and statements made by petitioner without the benefit of counsel in violation of both his rights under the Due Process Clause and the Sixth Amendment (Pet. Reply at 23).

Turning first to petitioner's claim that his counsel should have objected to the DEA Report as violative of the Confrontation Clause, I conclude that counsel was not deficient because any objection would have been futile.  "Both the Supreme Court and [the Second Circuit] . . . have consistently held that the right to confrontation does not apply to the sentencing context and does not prohibit the consideration of hearsay

15

testimony in sentencing proceedings." United States v. Martinez, 413 F.3d 239, 242-43 (2d Cir. 2005) (collecting cases); accord United States v. Legros, 529 F.3d 470, 477 (2d Cir. 2008); Reyoso v. Artus, 722 F. Supp. 2d 394, 401 (S.D.N.Y. 2010) (Marrero, D.J.); United States v. Uzsusamlar, 05 Cr. 1077 (PKL), 2007 WL 2456934 at *6 (S.D.N.Y. Aug. 28 2010) (Leisure, D.J.); see also Fed.R.Evid. 1101(d)(3) (rules of evidence are inapplicable to sentencing proceedings). In light of the foregoing authorities, any objection on the basis of the Confrontation Clause or the prohibition against hearsay would have been unsuccessful. Where, as here, the stated objection "would have been futile," "[c]ounsel's failure to object was not error." United States v. Weisser, 417 F.3d 336, 346 (2d Cir. 2005); see Vasquez v. United States, 733 F. Supp. 2d 452, 459-60 (S.D.N.Y. 2010) (Baer, D.J.) (holding that where the admission of evidence does not violate the Confrontation Clause, counsel's failure to object to it on that basis does not constitute ineffective assistance); United States v. Archuleta, 02 Cr. 1060 (LAP), 09 Civ. 1498 (LAP), 2010 WL 2835654 at *2 (S.D.N.Y. July 13, 2010) (Preska, D.J.) (same); Steele v. United States, 04 Civ. 6918 (AJP), 02 Cr. 629 (JSR), 2005 WL 704868 at *9-*10 (S.D.N.Y. Mar. 29, 2005) (Peck, M.J.) (same).

I also find that petitioner has waived the Due Process
and right-to-counsel arguments first raised in his Reply.  It is
well settled that "arguments raised for the first time in a reply
brief will not be considered."  Oliver v. United States, 07 Civ.
5921 (DLC), 2008 WL 190487 at *5 n.2 (S.D.N.Y. Jan. 22, 2008)
(Cote, D.J.); United States v. Yousef, 327 F.3d 56, 115 (2d Cir.
2003); Melo v. United States, 825 F. Supp. 2d 457, 464 (S.D.N.Y.
2011) (Marrero, D.J.).

Moreover, even if petitioner had properly raised these
two arguments, petitioner would not be entitled to habeas relief
because he has not demonstrated that counsel's putative error
resulted in any prejudice to him.  As explained above, errors of
counsel result in prejudice to a defendant if there is a reason-
able probability that but for counsel's errors, the outcome of
the case would have been different.  Strickland v. Washington,
supra, 466 U.S. at 694.  "This inquiry is closely tied to the
question of how strong the government's case would have been in
the absence of counsel's errors."  Vargo v. United States, 309 F.
App'x 485, 487 (2d Cir. 2009) (summary order), citing United
States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008).

Here, the Government's case that petitioner was an
organizer or leader was strong and did not turn on the DEA
Report.  The evidence that petitioner was an organizer or leader

17

included in-court testimony of petitioner's son, Macias, summa-
ries of petitioner's intercepted telephone calls and petitioner's
statements in various letters he sent to the Court.  <u>United
States v. Montoya Hernandez</u>, <u>supra</u>, 2009 WL 3642868 at *2-*3.
Collectively, these sources demonstrate that petitioner engaged
in the conduct that makes one a "leader" or "organizer" as those
terms are defined in the Guidelines.  U.S.S.G. § 3B1.1, Applica-
tion Note 4; <u>see</u> <u>United States v. Gaskin</u>, 364 F.3d 438, 467 (2d
Cir. 2004).  Even without the interview notes, there was evidence
that petitioner (1) had significant decision-making power over
the travel routes, accommodations, and whereabouts of couriers,
(2) paid and instructed other conspirators to transport the
heroin, (3) oversaw the monetary side of the conspiracy including
finding investors, purchasing the heroin and laundering the
proceeds and (4) shared 30 to 40 percent of the sales proceeds
with Macias.  Thus, even if the DEA Report had been properly
excluded, there is no reasonable probability that Judge Rakoff
would have concluded that petitioner did not play a leadership or
organizational role in the charged conspiracy.

Accordingly, I respectfully recommend that this aspect
of petitioner ineffective-assistance claim be denied.

18

b.   Counsel's Failure to Use
<u>the Government's Proffer Notes</u>

Petitioner next claims that his counsel was ineffective
for failing to use the Government's notes from its interviews of
Macias to impeach Macias's testimony at the <u>Fatico</u> hearing or as
substantive evidence (Attachment 1 to Pet. at 1).  Petitioner
asserts in his Reply that the notes from these meetings show that
petitioner was not the leader of the charged conspiracy (Pet.
Reply at 27).

"Decisions about 'whether to engage in
cross-examination, and if so to what extent and in what manner,
are . . . strategic in nature' and generally will not support an
ineffective assistance of counsel claim." <u>Dunham v. Travis</u>, 313
F.3d 724, 732 (2d Cir. 2002), <u>quoting</u> <u>United States v. Nersesian</u>,
824 F.2d 1294, 1321 (2d Cir. 1987); <u>United States v. Luciano</u>, 158
F.3d 655, 660 (2d Cir. 1998) ("[T]he conduct of examination and
cross-examination is entrusted to the judgment of the lawyer, and
an appellate court on a cold record should not second-guess such
decisions unless there is no strategic or tactical justification
for the course taken.").

Counsel's decision not to cross-examine a witness or
pursue a particular line of questioning may constitute ineffec-
tive assistance where, for example, counsel fails to examine

19

inconsistencies in a witness's stories that are of "enormous value" to the defense, Eze v. Senkowski, 321 F.3d 110, 132-33 (2d Cir. 2003), counsel fails to confront a victim with a prior inconsistent statement that impugns the credibility of her version of the events, Harris v. Senkowski, 298 F. Supp. 2d 320, 337-39 (E.D.N.Y. 2004), or counsel fails to confront a witness with evidence that contradicts her testimony, Harris v. Artuz, 288 F. Supp. 2d 247, 259-60 (E.D.N.Y. 2003).

Petitioner has not shown why his counsel's decision not to use the Government's notes to impeach Macias was deficient in any respect. Petitioner has not cited any statements made by Macias in his interviews by the Government that are inconsistent with Macias's testimony at petitioner's Fatico hearing. Nor is there evidence in the notes of prior inconsistent statements, an impaired ability to observe or any other factor that would impugn Macias's testimony. Moreover, petitioner's counsel elicited several statements from Macias on cross examination that tended to diminish petitioner's role in the conspiracy and showed that Macias did not have personal knowledge of petitioner's interactions with couriers. For example, Macias testified on cross examination that petitioner did not recruit or determine what amount to pay couriers and that petitioner's role was simply to launder proceeds to investors and pass heroin from suppliers to

transporters (Ex. C. to Opp'n at 39, 41).  Macias's testimony concerning petitioner's role was mixed -- some of it helped petitioner and some of it hurt petitioner.  Under these circum-stances, counsel's determination not to attempt to impeach Macias falls in the heartland of trial strategy and cannot provide a basis for an ineffective-assistance claim.  Dunham v. Travis, supra, 313 F.3d at 732 (holding that counsel's decision not to impeach a witness with her grand jury testimony was strategic because it contained information that would have prejudiced petitioner); see also United States v. Eisen, 974 F.2d 246, 265 (2d Cir. 1992); Piper v. Smith, 07 Civ. 9866 (DLC), 2011 WL 116147 at *3 (S.D.N.Y. Jan. 13, 2011) (Cote, D.J.); Moreno v. Smith, No. 06-CV-4602 (KAM), 2010 WL 2975762 at *22 (E.D.N.Y. July 26, 2010); Wells v. Miller, No. 02-CV-5778 (JBW), 03-MISC-0066 (JBW), 2003 WL 23185759 at *14 (E.D.N.Y. Oct. 23, 2003).

Accordingly, I respectfully recommend that petitioner's ineffective-assistance claim be denied on this ground.

### c.  Counsel's Decision Not to Object to the Government's Post-Hearing Submissions

Petitioner's last claim is that his counsel was inef-fective because he failed to call Judge Rakoff's attention to alleged errors in the Government's description of intercepted

telephone calls between petitioner and the intended recipient of the heroin, Jesus Adames (Pet. Reply at 27).

Following petitioner's <u>Fatico</u> hearing, the Government submitted a letter to Judge Rakoff in which it summarized why it believed petitioner was the organizer and leader of the charged conspiracy (Ex. D to Opp'n).  The letter states, in relevant part,

> Intercepted calls also demonstrate that Montoya Hernandez was responsible for coordinating the courier's arrival with heroin buyers in New York.  For example, in a call intercepted on June 8, 2007, Montoya Hernandez spoke with Jesus Adames about a shipment of heroin Montoya Hernandez was sending to Adames.  (GX 20).  Adames provided Montoya Hernandez his phone number and asked Montoya Hernandez to contact him at least 5 days before sending any shipments so that Adames could prepare.  (GX 20).  Similarly, in early October 2006, Montoya Hernandez had a series of calls regarding a shipment of heroin by a mule named Carlos.  (GX 20).  During the calls, Montoya Hernandez admitted to instructing Carlos which airport he should use to deliver the heroin and which hotel he should stay at after arriving in New York.  (GX 20).  After Carlos was arrested, Montoya Hernandez called the intended recipient of the heroin, Jesus Adames, to inform him that the shipment was lost.  (GX 20).

(Ex. D. to Opp'n at 3).  Annexed to the letter is a list of dates on which certain of petitioner's intercepted telephone calls took place and summaries of their content, including,

> **June 8, 2006** - Montoya Hernandez speaks to Jesus Adames (recipient of heroin in the United States).  Adames gives Montoya Hernandez his phone number and asks Montoya to contact him at least five days before

the heroin shipment so that Adames can prepare for it
(Adames prosecuted on state charges)

\*      \*      \*

**October 5, 2006** - Montoya Hernandez speaks to Jesus
Adames and Carlos Arturo Henao on the phone concerning
the heroin delivery.  Shortly after the conversation,
Montoya Hernandez speaks to Jesus Adames and Adames
informs Hernandez that Carlos Arturo Henao had gotten
arrested.

(Call Summary at 1-2).

Petitioner claims that the June 8, 2007 call referenced
in the Government's letter never took place because he was
arrested on May 31, 2007.  He hypothesizes that had his counsel
brought this error to Judge Rakoff's attention, Judge Rakoff
would have attributed a smaller amount of narcotics to him, and,
therefore, sentenced him to a shorter sentence (Attachment 1 to
Pet. at 1-2).

The Government admits that its statement in its letter
that the call took place on "June 8, 2007" was a typographical
error and that the call actually occurred on June 8, 2006 as
stated in the annexed Call Summary.  However, the Government goes
on to assert that its summary of the call is otherwise accurate
and that petitioner does not meet either prong of <u>Strickland</u>.

In his Reply, petitioner ignores the Government's claim
of a typographical error and makes two new arguments.  He now
contends that the June 8, 2006 call took place, but that he could

23

not have coordinated courier arrivals with Adames, as the Government alleges, because he "did not say anything" during the call (Pet. Reply at 28).  He also now contends that he did not invest in any heroin shipments after March 2006, and, therefore, the Government's letter incorrectly states that he called Adames on October 5, 2006 (Pet. Reply at 28).

These new contentions can be easily dispatched. Petitioner now does not dispute that he called Adames on June 8, 2006 and that Adames gave petitioner his number and instructions as to the arrival of future heroin shipments.  Whether petitioner spoke during the call -- a contention I find dubious[4] -- petitioner's counsel could not have successfully argued that petitioner's receipt of instructions concerning forthcoming heroin deliveries did not amount to coordination between petitioner and Adames.  Additionally, petitioner's assertion that the Government fabricated the October 5, 2006 calls is belied by various evidence, including petitioner's own testimony at his Fatico hearing that on October 5, 2006 petitioner spoke with Carlos Henao and

---

[4]A summary of intercepted calls from petitioner's telephone show that petitioner initiated the call with Adames and that the call lasted one minute and seven seconds (Attachment 2A to Pet. Reply).  Even without a transcript of the digitally recorded call, it seems extremely unlikely that petitioner would call Adames simply to listen to Adames' unsolicited instructions regarding upcoming heroin shipments.

Jesus Adames -- the courier and the owner of the October 2006 heroin shipment, respectively -- regarding Henao's arrest (See, e.g., Ex. C to Opp'n at 15-16, 34, 36-37; Attachment 2 to Pet. Reply at 1; Letter of Jairo Gabriel Montoya Hernandez to the Honorable Judge Rakoff, dated April 27, 2009, annexed as Exhibit H to Pet. Reply, at 2).  Because petitioner's arguments are plainly incorrect and are conclusively contradicted by other evidence, he fails to meet either prong of Strickland.

Accordingly, I respectfully recommend that petitioner's ineffective-assistance claim on this ground be rejected.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respect-fully recommend that petitioner's motion be denied in all re-spects.

In addition, because petitioner has not made a substan-tial showing of the denial of a constitutional right, I also recommend that a certificate of appealability not be issued.  28 U.S.C. § 2253.  To warrant the issuance of a certificate of appealability, "petitioner must show that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  Middleton v.

25

Attorneys Gen., 396 F.3d 207, 209 (2d Cir. 2005) (per curiam) (internal quotation marks omitted); see also Love v. McCray, 413 F.3d 192, 195 (2d Cir. 2005) (per curiam).  For the reasons set forth above, I conclude that there would be no difference of opinion among reasonable jurists that petitioner's federal rights were not violated.

I further recommend that certification pursuant to 28 U.S.C. § 1915(a)(3) not be issued because any appeal from this Report and Recommendation, or any Order entered thereon, would not be taken in good faith.  See Coppedge v. United States, 369 U.S. 438, 445 (1962).

V.   Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C)) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed.R.Civ.P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court, with courtesy copies delivered to the Chambers of the Honorable Jed S. Rakoff, United States District Judge, 500 Pearl Street, Room 1340, and to the Chambers of the undersigned, 500 Pearl Street, Room 750, New York, New York 10007.  Any requests for an extension of time for filing objections must be directed to Judge

26

Rakoff.   FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT

IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.

Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male

Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension

Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:  New York, New York
        April 28, 2014

                                   Respectfully submitted,


                                   _____
                                   HENRY PITMAN
                                   United States Magistrate Judge

Copies transmitted to:

Jairo Gabriel Montoya Hernandez
No. 80626-004
FCI Loretto
P. O. Box 1000
772 Saint Joseph St.
Loretto, Pennsylvania  15940

Steve C. Lee, Esq.
Assistant United States Attorney
Southern District of New York
1 St. Andrew's Plaza
New York, New York  10007

Rakoff.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL** RESULT

IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE REVIEW.

Thomas v. Arn, 474 U.S. 140, 155 (1985); United States v. Male

Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO Pension

Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v.

Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:  New York, New York
        April 28, 2014

                        Respectfully submitted,


                        _____
                        HENRY PITMAN
                        United States Magistrate Judge

Copies transmitted to:

Jairo Gabriel Montoya Hernandez
No. 80626-004
FCI Loretto
P. O. Box 1000
772 Saint Joseph St.
Loretto, Pennsylvania  15940

Steve C. Lee, Esq.
Assistant United States Attorney
Southern District of New York
1 St. Andrew's Plaza
New York, New York  10007

27